W. D. RUSSELL v. WATERLOO THRESHING MACHINE COMPANY.

Opinion filed March 6, 1908.

Rehearing denied June 2, 1908.

**Principal and Agent — Ratification — Failure to Repudiate.**

1. Unless a principal repudiates the unauthorized act of his agent, within a reasonable time after knowledge of the unauthorized act, he will be deemed to have ratified the same.

**Same — Ratification by Silence.**

2. There may be an implied ratification by silence in reference to the unauthorized acts of an agent done with the principal's knowledge, where the party dealing with such agent is thereby led to believe to his prejudice that the act of the agent is acquiesced in.

**Same — Acceptance of Benefits.**

3. Retaining possession of property purchased by an agent not authorized to do so, after knowledge of the unauthorized act, and acquiescing in the sale of such property to another, is an implied ratification of the unauthorized purchase of such property.

**Same — Knowledge of Facts.**

4. If a principal intentionally ratifies an unauthorized act of an agent without full knowledge of all the facts, when such facts are ascertainable, he cannot thereafter repudiate the unauthorized act to the prejudice of the other party.

**Same.**

5. The facts are set forth in the opinion, and are *held* to show a ratification of the act of an agent acting beyond his authority.

## Same — Evidence of Ratification.

6. Notes taken by an agent in the name of his principal for the purchase price of a machine sold without authority, of which fact the principal was afterwards informed, are competent evidence bearing on the question whether there was a ratification of the act with knowledge of all the material facts.

Appeal from District Court, Grand Forks County; *Fisk*, J.

Action by W. D. Russell against the Waterloo Threshing Machine Company. Judgment for plaintiff, and defendant appeals.

Affirmed.

*W. J. Mayer,* for appellant.

An agent to take orders for sale of machinery of a certain make, cannot bind his principal for the purchase of second hand machinery. Revised Codes 1899, sections 4320, 4321, 4322; Schull v. New Birdsall Co., 86 N. W. 654; J. I. Case T. Machine Co. v. Eichinger, 91 N. W. 82; Fletcher v. Nelson, 6 N. D. 94, 69 N. W. 53; Enc Law, volume 1, pages 990, 1023, 987; Haseltine v. Miller, 43 Maine 177; Beebe v. Equitable Mutual Assn. 40 N. W. 122; Wheeler v. McGuire, 2 L. R. A. 808; Stewart v. Woodward, 50 Vt. 75.

To show ratification of an unauthorized act, there must appear 1. Notice to principal of material particulars. 2. Possession of this information while retaining the benefits. 3. Retention of benefits after full knowledge of material facts without disaffirmance. Revised Codes 1899, section 4315.

Ratification is made only by accepting or retaining benefits with notice. Revised Codes 1899, section 4315; Jewell Nursery Co. .v. State, 59 N. W. 1025; 1 Am. & Eng. Enc. Law, 1189, 1190; Owings v. Hull, 9 Pet. 607, 9 L. Ed. 246.

*Geo. A. Bangs,* for respondent.

Agent's authority is implied by principal's acts. Aldrich, et al, v. Wilmarth, 54 N. W. 811; Griggs v. Seldon, 5 Atl. 504; Bank of Betavia v. Western R. R. Co., 12 N. E. 433.

If principal ratifies without full knowledge, he cannot complain if misled. Nemier Lbr. Co. v. Moore, 55 Ark. 244; Kelley v. Newberryport & Horse R. R. Co., 141 Mass. 496; Schultz v. Gordan, 32 Fed. 55; Wheeler v. N. W. Sleigh Co., 39 Fed. 354. Clark & Skyles on Agency, volume 1, page 266; Tilleny v. Wolverton, 55 N. W. 822.

If the principal, knowing all the facts, so acts as to indicate his approval of the agent's unauthorized conduct, and leads a third party to rely on it, he cannot deny such conduct to the latter's prejudice. Ward v. Williams, 26 Ill. 447; Truesdale v. Ward, 24 Mich. 117; Heyn v. O'Hagan, 60 Mich. 150; Lynn v. Wright, 18 Texas 317; Bergus v. Harris, 47 Vt. 322.

Whether agency is created by conduct is for the jury. Block v. Delucia, 66 Atl. 769; Boyington v. Von Eten, 35 S. W. 622; Saginaw T. & H. R. Co. v. Chappell, 22 N. W. 278; Ferneau v. Whitford, 39 Mo. App. 311; Hughbanks v. Boston Inv. Co., 60 N. W. 640; Franklin Blank Note Co. v. Mackey, 83 Hun. 511; Patterson v. Bond, 50 Iowa 508; Schlesinger v. Tax M. R. R. C. 87 Mo. 146; McLung Ex'rs. v. Spootwood, 19 Ala. 165.

Where the principal assents to his agent's acts, to the injury of a third party acting upon them, he cannot afterwards deny them. Caffer v. Walters, 9 Kan. App. 291; Matthews v. Fuller, 123 Mass. 446; Hurley v. Watson, 68 Mich. 532; Hanks v. Drake, 49 Barb. 186; Reese v. Medlock, 27 Texas 120; Roundy v. Erspamer, 87 N. W. 1087.

Use of property acquired by the unauthorized acts of agent, ratifies such acts. Pike v. Douglass, 28 Ark. 59; Duncan v. Keanly, 72 Conn. 585; Campbell v. Miller, 84 Ill. App. 208; Hastings v. Bangor House Props., 18 Maine 436; Sartell v. Frost, 122 Mass. 184; Wright v. M. E. Church, 74 N. W. 1015; Scott v. Middleton R. Co., 86 N. Y. 200.

If principal ratifies a part, he ratifies all. Smith v. Smith, 21 Pac. 4; King v. Franklin Lbr. Co., 83 N. W. 170; Strasser v. Conklin, 11 N. W. 254; Hutchings v. Ladd, 16 Mich. 493; Garner v. Mangan, 93 N. Y. 642; Hall v. Hopper, 64 Neb. 633.

Principal must repudiate promptly. Robbins v. Blanding, 91 N. W. 844; Cram v. Sickel, 51 Neb. 828; Hamlin v. Sears, 82 N. Y. 327; Parris v. Reeve, 23 N. W. 568.

Morgan, C. J. The plaintiff brings this action to recover the purchase price of a gasoline engine and one separator, with attachments, alleged to have been sold by the plaintiff to the defendant company. The answer to the complaint is a general denial. Plaintiff recovered a verdict for $1,660.68. A motion for a new trial was made and denied. Defendant appeals from the judgment entered on the verdict.

The facts shown by the record are substantially as follows:   One Armstrong was the agent of the defendant, and in charge and had the management of its office and business at Grand Forks.   His authority was, as a matter of fact, restricted to taking orders for the purchase of machinery manufactured by the defendant and submitting such orders to the defendant company for approval. He had no authority to make sales, nor to purchase machinery, for the company.    During the summer of 1905 he was endeavoring to secure an order for one of the machines manufactured by the defendant from one Hofto, and was in correspondence with the officers of the company at the main office in reference to such order. While such correspondence was going on, Armstrong, it is claimed by the plaintiff, bought a second hand threshing outfit from the plaintiff for the defendant for the sum of $1,600.   Later this same outfit was sold by one Osland, a salesman in the employ of the defendant, to the aforesaid Hofto, and said sale was reported to the defendant at the home office.   Hofto executed notes for the purchase price of this outfit in the sum of $1,800, and agreed to pay in cash on the purchase $75, or paid it; the agreed price being $1,875.   The machine was delivered to Hofto by Osland, and the notes were left with one Ryan, who was told to hold them, at Hofto's request, with Osland's consent, until Hofto was satisfied that the machine would work satisfactorily.   The notes were drawn in favor of the defendant company, but are still in Ryan's possession, as there seems to be some question as to whether Hofto was satisfied with the machine.

The question in issue in this case is whether Armstrong, the agent who dealt with the plaintiff when purchasing the second-hand separator and engine, was acting on behalf of his company, or independently for himself, or for the plaintiff.   It seems to be undisputed that Armstrong did not have actual authority to purchase secondhand machinery; nor did Osland, the other salesman, have actual authority to dispose of secondhand machinery, as agent for the defendant company.   Armstrong, however, was in charge and had full control of defendant's office in Grand Forks, and there was no one there who had authority superior to his.   Whether he had ostensible authority, and whether Russell was not justified in believing that he had actual authority, presents a very different question; and there is much to be said in favor of applying the doctrine of estoppel as preventing the defendant from now claim-

ing that the agent was without actual authority. However, it is not necessary to rest the case on that question, nor to decide that question. The defendant is estopped on other grounds from now saying that Armstrong was not its agent, with full power to purchase the machine from plaintiff. It had notice of facts that the machine had been purchased from plaintiff, and remained silent for so long a time without repudiating Armstrong's acts that it is presumed that it intended to and did ratify his acts.

On June 26, 1905, Osland made a daily report to the defendant at its home office as follows: "Travelers' Daily Report. Waterloo Threshing Machine Co., Manufacturers of Winneshiek Threshing Machinery, Waterloo, Iowa, June 26, 1905. Canvassed with K. O. Hofto. Lives six miles from Grand Forks. Canvassed for threshing machine Nos. 28-48, and self-feeder and Sattley weigher, Flour City engine. Price quoted $1,875. Terms: $75 cash, $900 October 1, 1905, $900 October 1, 1906. Sold to him (or them) Russell & Doll secondhand complete outfit. What is his financial standing? About $25,000. [Signed] Lars Osland, Traveler." This report was received at the home office at Waterloo, Iowa, on June 29th, as shown by indorsement thereon.

On receipt of this report the company wrote Osland in reference thereto in part as follows: "We note that you have sold to Mr. Hofto the Russell & Doll secondhand complete outfit for $1,875. We, of course, are at a loss to know why you have sold somebody's else goods to this customer. We supposed you were working for the Waterloo Threshing Machine Company. Of course, there may be something about this deal that we don't understand; but you should have mentioned that fact in your report. If these people are to take a new machine in the place of that, of course, that is a different proposition; but with no explanation it is rather a hard problem for us to solve. In the future please make mention of these things, so that we will know where we are at all the time, and do not fail to make a complete report of every transaction. * * * We certainly hope, however, that you have not sold somebody's else machine to accommodate them." From previous letters from Armstrong to the company, and answers thereto, it appears that the company was urging Armstrong to procure an order from Hofto for a new outfit manufactured by the company, and Armstrong was strongly asserting in his letters that he would procure such an order. The report of Osland gave the company unequivocal notice that a second-

hand rig formerly belonging to Russell & Doll had been sold to Hofto on behalf of the company in place of a new one as promised.

In the above letter to Osland the company did not disaffirm the sale, but gave instructions for more explicit reports in the future. They did not even request more definite facts as to the sale, but seemed to consider the sale as final. From Osland's report, the company was notified that $75 was to be or had been paid to it on this sale. It did not order a return of that money or forbid its receipt, and is to be considered as having acquiesced in having the agent retain it, although there is no evidence that the money was ever actually turned over to the company. However, it had notice that its agent had contracted to accept it. The facts in regard to the $75 as a cash payment under the terms of the contract are so meager as not to be of much assistance in determining whether the sale was ratified or not. It does not appear affirmatively whether Hofto ever paid this money or not. The terms of the sale were otherwise completed by delivery of the machine and of the notes to Ryan as before stated. It is not unreasonable to presume that it was paid under the circumstances. However, as it unequivocally appears that the machine was sold to Hofto after having been purchased from the plaintiff, it does not materially affect our conclusion that there was a ratification, whether the $75 had been paid by Hofto or not. Later on, and in September, the plaintiff demanded of one Vaughn, the secretary and a director of the company, payment of the purchase price of the machine. On November 16th the attorney for the plaintiff by letter to the company demanded payment of the purchase price and informed the company that suit would be commenced on November 20th unless the demand was complied with. This action was commenced on December 4th. During the fall of 1905 one Gaunt, an agent of the defendant company, had the Hofto matter in his hands for investigation, and employed an attorney to accompany him to the Hofto place to investigate the deal and ascertain whether the machine sold to him by Osland was working satisfactorily.

After a careful review of the evidence, we fail to find that the company has ever done one single act towards repudiating the purchase of the machine from plaintiff, although it had positive proof in June, 1905, that the agent, Osland, had sold the Russell rig to Hofto. Having knowledge that the Russell machine was sold and

delivered to Hofto on behalf of the company, and that its agent was to accept or had accepted $75 in cash on the sale, it necessarily had knowledge that its agents had purchased the machine from Russell. It was informed that its agents had purchased the second-hand rig, and it does not relieve the company from its duty to disaffirm the purchase to say that it did not have express knowledge of the fact that the company was to be held for the purchase price. Its agent had made a sale, and the company was informed of this fact. It cannot retain that machine with knowledge of the sale, and five months thereafter claim that its agents had exceeded their authority in buying and in selling the Russell machine. Considering together the traveler's report, Russell's demand for the purchase price, the agent Gaunt's investigation as to the satisfactory working of the machine in Hofto's hands, and that $75 cash was to be or had been paid to the agent, we have no hesitation in holding that the verdict was amply justified. The evidence shows ratification of the agent's acts after full notice of all the material facts. It must be borne in mind that the interests of Russell required a prompt disaffirmance of the acts of these agents upon ascertaining that they had exceeded their authority. He had parted with his machine, and the same was being used by Hofto, which necessarily means that it was deteriorating in value. By the silence of the company, he was justified in believing that the company acquiesced in Armstrong's purchase from him, even had he known that Armstrong was acting in excess of his authority, which is not the fact. Where the rights of third parties are involved, the principal is required to act with more promptness than when those of the agent alone are concerned.

As stated in Mechem on Agency, section 155: "But, where the rights and obligations of third persons may depend on his election, it is obvious that he is bound to act or suffer the necessary consequences of inaction, and that if, after knowledge, he remains entirely passive in regard to the transaction, it is but just, when the protection of third persons may require it, to presume that what, upon knowledge, he has failed to repudiate, he has at least tacitly confirmed." The company had no right to defer for an unreasonable time a repudiation of Armstrong's act in buying the machine from Russell until it had satisfactorily adjusted the troubles growing out of the Hofto sale. The purchase from Russell was unconditional and completed, and in no way connected with or dependent

upon a sale to Hofto. The company should have repudiated the sale within a reasonable time after notice of the purchase from Russell and that he was claiming that the company was bound to pay the purchase price. Computing the time from June 29th until the commencement of this action, there was no disaffirmance within a reasonable time. Even from September, when a demand was made for payment by Russell, the same conclusion is reached. Upon receiving notice of the sale to Hofto, the company should have repudiated it. It cannot repudiate the Russell sale and affirm the Hofto sale. If the Russell sale had been repudiated, Russell would have been entitled at once to a return of the machine. This right to the return thereof cannot be complied with, and at the same time ratify the Hofto sale. By affirming the Hofto sale, by a failure to disaffirm it within a reasonable time, the purchase from Russell was also ratified. The defendant necessarily knew that title to the machine was in the company, as it had sold it through its agent to Hofto. By remaining silent beyond a reasonable time, and thereby ratifying Armstrong's act, it cannot now repudiate his act on the ground that it was not informed of all the facts.

It is claimed that the company was not bound to repudiate Armstrong's acts, for the reason that he informed the defendant on July 3d that he had sold the rig to Hofto for Russell & Doll in order to sell them a new machine. If this was the fact, it left the company in possession of contradictory reports from two different agents. Osland was assuredly acting for the company, as the notes from Hofto were taken in the company's name on the company's blanks. The company had the right to ratify or disaffirm this contract when these contradictory reports were made to it. By remaining silent it cannot now repudiate the purchase by saying that it acted on a false report, when it had the means accessible to ascertain the truth, and thus prejudice the interests of an innocent third party. As stated in Clark & Skyles on the Law of Agency, page 339; "Knowledge by the principal will not be presumed from the fact that he had a reasonable opportunity to acquire it; but, when there has once been a ratification, he cannot afterwards avoid the effect thereof by showing that he was not acquainted with all the facts of the transactions ratified, where he was in possession of the means of learning them. Although, as a general rule, a principal must have full knowledge of all the facts,

as we have seen before, yet the principal cannot purposely remain ignorant, where the means of information is within his control, so as to escape the effect of his acts that would otherwise amount to a ratification." In Ehrmanntraut v. Robinson, 52 Minn. 333, 54 N. W. 188, the court said: "It is sometimes said that, to constitute a ratification of an unauthorized act of an agent, the principal must have had knowledge of all the material facts. As to a past and completed transaction, this would be' generally true; but there are many cases where the conduct of the principal may amount to a ratification, although he may not know all the facts as to the unauthorized act of the agent in his behalf. He may ratify by voluntarily assuming the risk without inquiry, or he may deliberately ratify upon such facts as he possesses, without caring for more."

There is nothing in Armstrong's statement to the company on July 3d that negatives the fact shown by Osland's report that he had sold the machine to Hofto for the company. By selling it for Russell & Doll, as stated by Armstrong, the sale is not necessarily to be understood as having been made as their property, nor as their sale. The real question involved, however, is: Did Armstrong buy the machine from Russell for the defendant? And on that question there is no conflict.

Our conclusion is that the purchase from plaintiff and the sale to Hofto were ratified for the reasons: (1) Not ordering a return of the machine to Russell upon learning that it had been sold to Hofto. It is well established that, if an agent exceeds his authority in the purchase of property for his principal, the purchase is impliedly ratified if the property is retained after knowledge that the purchase was without or in excess of authority. Clark & Skyles on Agency, page 325, and cases cited; Wright v. M. E. Church, 72 Minn. 78, 74 N. W. 1015; Scott v. Middleton R. Co., 86 N. Y. 200; Campbell v. Millar, 84 Ill. App. 208; Sartwell v. Frost, 122 Mass. 184. (2) The defendant was silent, and permitted the acts of his agents to go unchallenged, for so long a time after knowledge that they had acted without authority, that their acts were impliedly ratified; and the defendant cannot now deny such authority, where the plaintiff had reason to believe from such silence that the agent's acts were authorized. That silence is presumed to be a ratification under such circumstances is also well settled. Clark & Skyles on Agency, page 335, and cases cited.

It is claimed, also, that a reversible error was committed in receiving in evidence the notes executed by Hofto for a part of the purchase price of the machine. These notes were material evidence to show that Osland was acting on behalf of the defendant in making the Hofto sale. The company was also notified by the report of June 26th that notes were to be taken for the purchase price. We think they were competent evidence to show what the agent had done and what facts the defendants had notice of as bearing on the question of ratification.

The judgment appealed from is affirmed. All concur.

FISK, J., disqualified. Hon. W. J. KNEESHAW, judge of the Seventh judicial district, sitting by request.