## JOHN F. BACON v. BANKERS TRUST & SAVINGS BANK.[1]

### July 18, 1919.

### No. 21,348.

**Contract of employment ratified by board of directors.**

1. The contract of employment involved in this action, though entered into by certain officers of defendant corporation without authority, was made valid and binding by the subsequent acquiescence of the board of directors, the contracting authority of the corporation, with knowledge of the facts.

**Whether wrongful discharge of plaintiff was breach of contract, question for jury.**

2. The question whether there was a breach of the contract by the wrongful discharge of plaintiff was one of fact, and the verdict of the jury thereon is sustained by the evidence.

**Evidence.**

3. There were no errors in the admission of the evidence.

Action in the district court for Hennepin county to recover $4,500 for breach of a contract of employment. The facts are stated in the opinion. The case was tried before Jelley, J., who at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $4,800. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*Henry Deutsch* and *Donald E. Bridgman,* for appellant.

*Cobb, Wheelwright & Dille* and *Hoke, Krause & Faegre,* for respondent.

BROWN, C. J.

Action for the breach of an alleged contract of employment in which plaintiff had a verdict, and defendant appealed from an order denying its alternative motion for judgment or a new trial.

[1]Reported in 173 N. W. 719.

Defendant was organized as a trust company and savings bank under and pursuant to the laws of this state, and entered upon the transaction of its business as such on December 4, 1916. The government and control of the company were, by its articles of incorporation as well as by its by-laws, vested in a board of directors of not less than 9 nor more than 35 members, chosen from the stockholders, though the active management of its affairs was given over to or at least assumed by the president, the secretary-treasurer, and the cashier, subject to the approval or disapproval of the directors. At the time of the organization the business of the institution was divided into departments, among others, a banking department, a savings department, a trust department and a bond department. These were presided over by managers who were selected and employed with special reference to the fitness of each for the particular work.

Plaintiff in this action, then a resident of Chicago, was an experienced bond salesman of which fact the president and secretary of the bank were familiar, and they initiated negotiations with him looking to his employment as manager of its bond department. The negotiations were participated in by the officers named and also the cashier and to a certain extent by one member of the board of directors, but the president and secretary were the moving factors therein; they were members of the board, though the cashier was not. The negotiations resulted in the employment of plaintiff for the department stated, and he was formally installed in the position on or about December 15, 1916, and on the eighteenth of that month the president formally executed a writing evidencing the contract of employment which plaintiff indorsed with his acceptance. This writing set forth all the terms of the employment, which was to continue for the period of one year from December 15, 1916. Plaintiff thereafter continued in the active discharge of the duties of the department, making purchases of bonds for the bank and attending to other detail work until April 27, 1917, when he was discharged from the service by the secretary for alleged disobedience of orders. His compensation was paid up to and including May 1. He was unable to obtain employment during the remainder of the year and brought this action to recover the amount that would have accrued to him from the date of the discharge, basing his action on the allegation

that the discharge was without justifiable cause or excuse, and constituted a breach of the contract.

Defendant interposed in defense that the contract of employment was invalid, for the reason that the president and secretary of the bank had no authority to enter into the same without being expressly thereto authorized by the board of directors, which authorization was not given. Therefore that defendant was not liable, even though plaintiff was wrongfully discharged. The rightfulness of the discharge was also alleged in defense.

The trial below developed three principal questions, namely:

(1) Whether the president and secretary had authority to enter into the contract, and, conceding that they had no such authority;

(2) whether the board of directors with knowledge of the facts subsequently ratified the same; and

(3) whether the discharge and dismissal of plaintiff were justified by the alleged disobedience of orders.

The trial court ruled as a matter of law that the president and secretary had authority to enter into the contract with plaintiff, and further that the board with knowledge of the facts subsequently ratified their action, thereby giving it validity and binding force even though not originally authorized. The third question was submitted to the jury and the verdict supports plaintiff's claim that his discharge was without justification or valid excuse.

1. We pass the question of the authority of the president and secretary to enter into the contract without discussion or comment, for we are clear that the trial court was fully justified by the evidence in holding as a matter of law that the contract was subsequently ratified by the directors with knowledge of the facts. That conclusion renders the question of the contracting authority of the president and secretary of no special importance, to which no further reference need be made. That leaves only the second and third questions for consideration. We dispose of them in their order.

2. The different departments of the bank were regularly created, presumptively by the board of directors, for the members thereof were, by the articles of incorporation and by the by-laws, given full authority and power in respect to the management of all its affairs. The creation

and existence of the bond department were advertised on the literature of the bank, and placarded within the banking building. By a public circular issued by the bank plaintiff was named as having charge of that department, coupled with the announcement that it had been opened for the transaction of business. Plaintiff was an experienced bond salesman, and immediately, upon being placed in charge of the department, became active in the discharge of his duties as manager thereof. He purchased bonds for the bank, and the purchases were approved. He recommended the purchase of other bonds as safe and suitable investments to be made. In the performance of his work he conferred with many of the directors, each of whom was thus informed of the position he occupied, though the matter of his employment never came before the board for official action. No member of the board became a witness on the trial to deny knowledge of his employment, or that the members thereof were not aware of the existence of the department of which he was in charge. Plaintiff's term of service commenced in December and continued until the latter part of April following. The board of directors held monthly meetings during that time and the members thereof made no objection to his presence at the bank nor to the work being performed by him. And, so far as the record discloses, no inquiry looking to an explanation of his presence in the banking house or his authority to represent the bank in the particular department was made by any of them. That they knew of his employment is clear.

It is settled law that a contract entered on behalf of a corporation by the unauthorized act of an officer or agent may be rendered valid and binding by ratification. 1 Dunnell, Minn. Dig. § 2116; Willis v. St. Paul Sanitation Co. 53 Minn. 370, 55 N. W. 550; Norwegian E. L. B. C. v. United States F. & G. Co. 81 Minn. 32, 83 N. W. 487. There is a ratification as a matter of law when it appears that the board of directors of the corporation, or other managing officers having the power and authority to enter into like contracts, either affirmatively approve of the unauthorized contract, or with knowledge of the facts silently acquiesce therein or fail promptly to repudiate it. 7 R. C. L. 663, et seq.

The facts in this case make a clear case of ratification by acquies-

143—M. 21

ence. The employment of plaintiff was within the power of the corporation, and the evidence leaves no doubt that the directors, the managing authority of the bank, knew of the establishment of the bond department and of the employment of plaintiff to manage the same. Investments made by him involved large sums of money, the benefits whereof the bank received and retained. Unless the directors were wholly neglectful of their duties, and their silence on the subject will not justify the conclusion that they were (Martin v. Webb, 110 U. S. 7, 3 Sup. Ct. 428, 28 L. ed. 49), there was knowledge on their part of all the facts, and the failure to interpose their restraining hand is equivalent to an express approval of the contract. Pittsburg, C. & St. L. Ry. Co. v. Keokuk & H. Bridge Co. 131 U. S. 371, 9 Sup. Ct. 770, 33 L. ed. 157; Indianapolis Rolling Mill Co. v. St. Louis, F. S. & W. R. 120 U. S. 256, 7 Sup. Ct. 542, 30 L. ed. 639; Russell v. Waterloo Threshing Machine Co. 17 N. D. 248, 116 N. W. 611; Pink v. Metropolitan Milk Co. 129 Minn. 353, 152 N. W. 725.

3. The contention that the evidence conclusively shows that plaintiff was justifiably discharged is not sustained. In our view of the record the question was one of fact for the jury, and the verdict is sufficiently supported.

The discharge was based on the ground that plaintiff had disobeyed orders in reference to the purchase of certain bonds, for which the secretary exercised the right to dismiss him from his employment. In support of the discharge defendant calls attention to a provision of its by-laws declaring that the board of directors shall decide upon all investments of the capital stock and other funds of the bank. It may be conceded that under the by-laws the board of directors had exclusive authority in the matter of bank investments, and that it was plaintiff's duty to obey orders and instructions issued by them. But that fact falls far short of showing a violation of duty by plaintiff. He was employed and installed as manager of the bond department, on the strength of his experience as a bond salesman, and went about the performance of his duties without specific orders or instructions from the board of directors. In fact we find no evidence that the board had issued or promulgated any order in reference to investments to be made by his department. Therefore plaintiff violated no orders coming to

him from that direction. The secretary assumed the right to give orders, but by what authority does not appear. No officer of the bank by action of the directors was made general manager of its affairs, or of the various departments, and, so far as the record advises us, the general supervisory authority which seems to have been exercised by the secretary was not a grant from the governing board. He claimed no such authority, but testified that he made it his business to see to and watch the expenditures of the bank. While his efforts in this respect were commendable, the exercise of such authority did not operate to displace the board of directors, or, as a matter of law, justify the issuance of orders which should come primarily from them. And although he may have had some right of control over plaintiff in the matter of purchasing bonds, we think it was a fair question for the jury to say whether a violation of his orders constituted a disobedience of plaintiff's duties and obligations to the corporation.

4. The assignments of error, challenging the rulings of the court in the admission of certain evidence, have all been considered, with the result that no prejudicial error appears.

Order affirmed.